## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOHNNY TLAPANCO,

               Plaintiff,                                      Case No.: 15-cv-02852-AJN

v.                                                      Hon. Alison J. Nathan

JON ELGES, individually and in his official
capacity as a detective of the Oakland County
Sheriff's Department; and CAROL LIPOSKY,
individually and in her official capacity as a
detective of the Oakland County Sheriff's
Department; MICHAEL J. BOUCHARD,
individually and in his official capacity as
Oakland County Sheriff, and OAKLAND
COUNTY a Political sub-unit of the State of
Michigan; GREGORY THORNTON,
individually and in his official capacity as a
detective of New York Police Department;
"John Doe" LOUWAERT, individually and in
his official capacity as a detective of New York
Police Department; and the NEW YORK
POLICE DEPARTMENT, a municipal agency
of the City of New York;

               Defendants.

_____/

Ari Kresch (1308931)
Attorney for Plaintiff
26700 Lahser Rd., Suite 400
Southfield, MI 48033
T: (248) 291-9712

Solomon M. Radner (P73653)
1-800-LAW-FIRM, PLLC
Co-Counsel for Plaintiff
26700 Lahser Rd., Suite 400
Southfield, MI 48033
T: (248) 291-9719

_____/


## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, JOHNNY TLAPANCO, by and through his attorneys Ari Kresch and Solomon M. Radner, complaining of the defendants, respectfully allege as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action against two detectives of the Oakland County Sheriff's Department of the State of Michigan, Jon Eleges (hereinafter "Elges") and Carol Liposky (hereinafter "Liposky"), Michael J. Bouchard (hereinafter "Bouchard"), the Sheriff for Oakland County, the County of Oakland, and two detectives of the New York Police Department, Gregory Thornton (hereinafter "Thornton") and "John Doe" Louwaert (hereinafter "Louwaert"), and the New York Police Department, in which the Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983.

2. Plaintiff seeks damages, both punitive and compensatory, an award of costs and attorney's fees, and any other relief this court deems just and proper.

## JURISDICTION

3. This action is brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is found upon 28 U.S.C. § 1331, and 1343.

## VENUE

5. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2).

6. The majority of the Plaintiff's claims stem from his arrest and detention without sufficient probable cause or privilege under the color of state law in New York.

7. As a result of Plaintiff's arrest by the New York Police Department officials, Plaintiff spent two weeks at Riker's Island jail before being extradited to Michigan.

8. Under 28 U.S.C. § 1391(a)(2) Plaintiff is not required to establish that the Southern District has the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred here, even if a greater part of the events occurred elsewhere, but the majority of the actionable events did take place in the Southern District of New York.

9. Venue is proper in this district under § 1391(b)(2), because the search and seizure, the arrest, and the imprisonment in New York, which make up the majority of the unconstitutional actionable events in this litigation, all occurred in the Southern District of New York, giving rise to the Plaintiff's § 1983 claim.

10. As the significant events or omissions material to the Plaintiff's claim have occurred in New York. Therefore, New York is a proper venue for Plaintiff's claims against the NYPD Defendants.

## JURY DEMAND

11. Plaintiff respectfully demands a trial by jury of all issues in this matter, pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

12. Plaintiff JOHNNY TLAPANCO is a citizen of the United States, and at all relevant times was a resident of the City of Brooklyn, State of New York.

13. Defendant JON ELGES is a detective for the sheriff's office for the County of Oakland, State of Michigan, and is a duly sworn police officer of said department,

acting under the supervision of said department and according to his official duties.

14. Defendant CAROL LIPOSKY is a detective for the sheriff's office for the County of Oakland, State of Michigan, and is a duly sworn police officer of said department, acting under the supervision of said department and according to her official duties.

15. Defendant MICHAEL J. BOUCHARD is the Sheriff for the County of Oakland, State of Michigan, and is a duly sworn police officer of said department, acting under the supervision of said department and according to his official duties.

16. Defendant OAKLAND COUNTY is a political sub-unit of the State of Michigan.

17. Defendant GREGORY THORNTON, is a detective for the New York Police Department, City of New York, and State of New York; and is a duly sworn police officer of said department, acting under the supervision of said department and according to his official duties.

18. Defendant "John Doe" LOUWAERT, is a detective for the New York Police Department, City of New York, and State of New York; and is a duly sworn police officer of said department, acting under the supervision of said department and according to his official duties.

19. Defendant NEW YORK POLICE DEPARTMENT is a municipal agency of the City of New York and was charged with the responsibility of enhancing the quality of life in New York City by working in accordance with constitutional rights to enforce the law.

20. That at all times relevant hereinafter mentioned, the Defendants Thornton and Louwaert were personally acting under the color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of New York and State of New York.

21. That at all times relevant hereinafter mentioned, the Defendants Elges, Liposky and Bouchard were personally acting under the color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of Michigan and/or the County of Oakland.

22. Each and all of the acts of the Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by the Oakland County Sheriff's Department.

<u>FACTS</u>

23. On or about March 6, 2014, a fourteen year old female student (hereinafter "the student") of Oxford High School located in Rochester, Michigan, made a complaint to her high school security officer that she was being blackmailed by a stranger via an online instant messenger known as "KIK."

24. In her statement, the student said that beginning on the morning of March 4, 2014, the stranger messaging her under the display name "anonymous" stated that he had already hacked into her cell phone and now possessed several nude pictures of her, which she had previously taken of herself and stored on her phone. He further demanded that she send him additional nude photos of herself, in specific outfits and/or positions, and that if she refused, he would send the pictures he already obtained of her, to all of her friends and family.

5

25. The blackmail continued, even after the student complied with some of the requests she received from the stranger, and she told the school security officer after the stranger told her that he would be contacting her regularly asking for more pictures until she reached the age of twenty-one.

26. On March 6, 2014, the high school security officer contacted the Oakland County Sheriff's Department to inform them of the student's complaint. The case was then assigned to Defendant Elges for investigation.

27. During an interview between Defendant Elges and the student, Elges questioned her as to whether anyone else had possessed her phone recently, who could have had acquired her personal photos. The student informed Elges that yes, a male friend of hers had taken her phone on or about February 27, 2014, and had kept the phone overnight. She further stated that she had sent nude photos of herself to this friend of hers in the past.

28. After interviewing both the student and her friend, both of them signed consent forms and turned over their cell phones to Defendant Elges for inspection, along with an iPod that belonged to the student.

29. Upon inspection, there was no question that someone was in fact blackmailing the student for nude photos; it was now up to Defendant Elges to determine who this individual was.

30. In Defendant Elges' own investigative report he acknowledges on both March 11, 2014 and March 14, 2014, that through the phone records of the friend's cell phone carrier, **a large amount of data was sent from the student's phone to the friend's phone**, on February 25, 2014 and February 26, 2014. This was never

investigated further, although it is fairly obvious that the first person of interest should have been this friend.

31. Instead, on or about March 6, 2014, without performing any due diligence whatsoever, specifically but not limited to, researching the difference between an individual's KIK account *username* versus their *display* name, Defendant Elges sent a written request to KIK for the e-mail address and recent IP addresses belonging to **username** "anonymous".

32. Sometime thereafter, Defendant Elges was provided the information he requested, including Plaintiff's personal G-Mail e-mail address, and two IP addresses.

33. On or about March 18, 2014, Defendant Elges served a search warrant on Google to provide the identity of the person who opened the e-mail account, and the next day, Google responded providing Plaintiff's full name, among other information relating to his account.

34. Around that same date, Defendant Elges executed a search warrant for the two IP addresses and learned the locations of the college Plaintiff' attends, and his residence.

35. Defendant Elges also executed a warrant to the college Plaintiff attends, for the data indicating whether Plaintiff logged into KIK from any of the college's computers on the specific dates the student was contacted by "anonymous", March 4, 2014 and March 6, 2014. This data supposedly indicated that Plaintiff did log into KIK on those days, but could not indicate if any messages were exchanged. This data was supposedly converted into a chart that was easier to

understand, and saved by Defendant Elges, but never provided to Plaintiff's defense counsel in his impending criminal case.

36. On or about April 18, 2014, Defendant Liposky performed a forensic examination on the student and friend's cell phones, as well as the student's iPod.

37. On or about April 23, 2014, Defendant Elges received and reviewed the forensic investigation results, and made note in his investigative report of some of the messages that were sent from "anonymous" to the student.

38.  On or about May 1, 2014, Defendant Elges received results from yet another warrant for Plaintiff's personal information, this one sent to Facebook, and learned Plaintiff's cell phone number. Elges proceeded to execute a search warrant on Plaintiff's cell phone carrier for phone records.

39. Sometime thereafter, Defendant Elges contacted Defendant Thornton of the New York Police Department, to execute the premises search warrant of 3154 Coney Island Ave Brooklyn NY 11235 and sent an affidavit sworn in front of Magistrate Soma.

40. Shortly thereafter, Defendant Thornton contacted Elges and informed that he swore and served the warrant requesting connection data for Kingsborough Community College and retrieved the requested data.

41. On May 21, 2014, Defendant Louwaert of the New York Police Department, acting solely and detrimentally on the false information provided by Defendant Elges, executed a search warrant together with Defendant Elges, on Plaintiff's home and seized several electronics belonging to Plaintiff and his family

members, including two desktop computers, a laptop, a cell phone, three iPods and four jump drive storage devices.

42. After securing the electronics, Defendant Louwaert and Defendant Elges then asked Plaintiff if he would speak with them regarding their investigation, and Plaintiff willingly cooperated.

43. Plaintiff was questioned about the underage student from Oakland County, Michigan, and Plaintiff truthfully told the officers he doesn't believe he's ever spoken with this girl, but that as a twenty year old young man, he does frequently speak with women his age online. Plaintiff further stated in his statement that he has **never** requested or received nude photos from anyone underage.

44. Plaintiff was questioned about his username "anonymous" to which he truthfully acknowledged did belong to him. Plaintiff was then shown some of the messages sent to the student by "anonymous" and he truthfully informed the Defendants that he did not send any of them.

45. On or about June 20, 2014, Defendant Elges reviewed the analysis of Plaintiff's belongings, and indicates in his own investigative report that there were *no images* of the student, and *no KIK messages sent to anyone* until March 17, 2014.

46. At this point, the obvious and fool-proof solution to determine whether Plaintiff was in fact the perverted individual who was blackmailing the student, Defendant Elges could have and should have simply sent a reply message from the student's device to "anonymous" and see if the reply appears on Plaintiff's device; if it

does, case solved, and if it does not, Elges should have considered the fact that he

has been pursuing the wrong person.

47. Instead, on July 9, 2014, Plaintiff was arrested by unknown New York Police

Department officers, who were again acting solely and detrimentally on the false

information provided by Defendants, on eight felony charges, most of which carry

maximum sentences of twenty years to life in prison, and are listed as follows:

    a. Three counts of child sexually abusive activity

    b. Four counts of using a computer to commit a crime

    c. One count of accosting a child for immoral purposes

48. After being booked, Plaintiff spent ***two weeks at Riker's Island jail***, from July 9,

2014 through July 22, 2014, until Defendant Elges came to New York, and

extradited Plaintiff to Michigan; a place Plaintiff had never visited before.

49. Once extradited to Michigan, Plaintiff was arraigned by video from the Oakland

County Jail on July 23, 2014 and pleaded not guilty to all charges.

50. One day prior, July 22, 2014, Plaintiff's family retained a Michigan defense

attorney, who is undersigned's co-counsel in this action, Solomon Radner of 1-

800-LAW-FIRM, PLLC, to represent Plaintiff.

51. After receiving and reviewing the discovery materials, on August 11, 2014, Mr.

Radner met with Defendant Elges and, after reviewing the evidence together woth

Defendant Elges, informed Defendant Elges that the evidence clearly proved that

Elges has been pursuing the wrong man. Radner explained that while Plaintiff did

in fact possess a KIK account with a ***username*** "anonymous", the individual

blackmailing the student was using a ***display name*** "anonymous", and ***anybody***

can make their ***display name*** whatever they choose, as it is not permanent, unlike the username. Moreover, there could be hundreds of people using the display name "anonymous" at any given time.

52. Further, the evidence clearly showed that the perverted messages were being sent by username "anonymoufl" and not by username "anonymous"

53. On August 12, 2014 at the preliminary examination hearing in the District Court for the City of Oxford, Michigan, after conversation took place between Defendant Elges and the Oakland County Prosecutor's Office, the prosecutor informed the Court that he sought to drop all charges against Mr. Tlapanco, and the case was dismissed. The Judge also ordered for Mr. Tlapanco's mugshot and fingerprints to be destroyed and his electronics to be returned to him, thereby denying Defendant Elges' request to keep Plaintiff's electronics to conduct a thorough forensic analysis on them.

54. Plaintiff was then released from custody, and was able to return home to New York after spending a total of five weeks of being unlawfully arrested and imprisoned for crimes he did not commit, due to the Defendants'recklessly negligent, incompetent and unconstitutional behavior and acts.

55. As a result of the foregoing, Plaintiff was forced to drop out of college for the semester, and sustained *inter alia,* emotional distress, embarrassment, humiliation, depression, anxiety and deprivation of his constitutional rights.

**AS AND FOR FIRST CAUSE OF ACTION**
<u>(Deprivation of Rights Under 42 U.S.C. § 1983)</u>

11

56. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs  "1" through "55" with the same force and effect as if fully set forth herein.

57. All of the aforementioned recklessly indifferent and plainly incompetent acts of Defendants, including the arrest and detention of Plaintiff without sufficient probable cause or privilege, were carried out under the color of state law.

58.  All of the aforementioned recklessly indifferent and plainly incompetent acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

59. The recklessly indifferent and plainly incompetent acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

60. The recklessly indifferent and plainly incompetent acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the County of Oakland, Michigan, and the Oakland County Sheriff's Department, all under the supervision of ranking officers of said department.

61. Defendants collectively and individually, while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden under the Constitution of the United States.

62. Defendant Gregory Thornton of NYPD, while arresting Plaintiff for the purpose of extradition to Michigan, failed to mandate a sufficient factual demonstration to satisfy the statutory requirements designed to protect a New York resident though Plaintiff was not physically present in Michigan at the time of the alleged crime.

63. Defendant Thornton of NYPD failed to comply with the requirements of interstate extradition as laid out by N.Y. Crim. Proc. Law § 570.16.

64. The Defendants in this case, acting in supervisory roles, at least implicitly authorized approved or knowingly acquiesced in the unconstitutional behavior of the offending subordinates.

65. Arrest and extradition of Plaintiff without probable cause and the seizure and search of his electronic devices without probable cause constitute a deprivation of his liberty, in violation of 42 U.S.C. § 1983.

### AS AND FOR A SECOND CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

66. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "65" with the same force and effect as if fully set forth herein.

67. Defendants Thornton and Louwaert relied solely on the information from the Michigan Defendants and conducted Plaintiff's premises search.

68. Defendants seized, arrested and imprisoned Plaintiff without probable cause, privilege or any other justification.

69. In spite of Plaintiff's repeated denial of his involvement in the alleged offense, Defendant Thornton acted detrimentally and without reasonable trustworthy information arrested Plaintiff.

13

70. Prior to Plaintiff's arrest, both Defendants Thornton and Louwaert failed to conduct a reasonable investigation for probable cause.

71. The Defendants in this case, acting in supervisory roles, at least implicitly authorized approved or knowingly acquiesced in the unconstitutional behavior of the offending subordinates.

72. Defendants collectively and individually, while acting under the color of state law, caused Plaintiff to be deprived of his right to be free from false arrest and/or unlawful imprisonment.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Malicious Prosecution under 42 U.S.C. § 1983)

73. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "72" with the same force and effect as if fully set forth herein.

74. Defendants initiated the criminal proceeding against Plaintiff without probable cause, privilege or any other justification.

75. Before detaining Plaintiff, Defendants Thornton and Louwaert failed to make the further inquiry that a reasonable person would have made.

76. The criminal proceeding ended in Plaintiff's favor.

77. Both Defendants Thornton and Louwaert reckless or gross negligent disregard to Plaintiff's rights of proper investigative procedure of prior inquiry before arrest, resulted in Plaintiff's wrongful extradition.

78. The Defendants in this case, acting in supervisory roles, at least implicitly authorized approved or knowingly acquiesced in the unconstitutional behavior of the offending subordinates.

14

79. Defendants collectively and individually, while acting under the color of state law, acted maliciously and as a consequence of the proceeding, Plaintiff suffered a significant deprivation of liberty afforded to him by the Constitution of the United States.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Malicious Abuse of Process under 42 U.S.C. § 1983)

80. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "79" with the same force and effect as if fully set forth herein.

81. Defendants issued a Complaint against Plaintiff in the District Court for the City of Rochester, Michigan, with the collateral objective of covering up their abuse of authority, and for which could have resulted in Plaintiff spending the rest of his life in prison, if it was not for the proper investigation executed by Plaintiff's defense counsel.

82. Defendants Thornton and Louwaert's failure to conduct a reasonable investigation for probable cause before arrest caused Plaintiff denial of procedural due process.

83. The Defendants in this case, acting in supervisory roles, at least implicitly authorized approved or knowingly acquiesced in the unconstitutional behavior of the offending subordinates

84. Defendants collectively and individually, while acting under the color of state law, thereby caused Plaintiff to be deprived of his right to be free from malicious abuse of process.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (County/Supervisory Liability under 42 U.S.C. § 1983)

15

85. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86. At all times relevant herein, Defendant Oakland County, acting through its supervisory officers and officials such as Defendant Bouchard, by its own customs, policies or practices, failed to establish, maintain or enforce proper police procedures, hiring standards and practices, training practices, as well as disciplinary procedures, necessary to prevent the unconstitutional conduct herein described directly, and therefore constitutes the moving and proximate force of injury to the Plaintiff by depriving him of his rights afforded to him under the first and fourteenth amendments to the Constitution of the United States.

87. As a direct and proximate result of the policies, practices and customs of the Defendant Oakland County, the Plaintiff suffered damages as have been previously described herein.

88. At all times relevant herein, Defendant New York Police Department, acting through its supervisory officers and officials such as Defendants Thornton and Louwaert, by its own customs, policies or practices, failed to establish, maintain or enforce proper police procedures, hiring standards and practices, training practices, as well as disciplinary procedures, necessary to prevent the unconstitutional conduct herein described directly, and therefore constitutes the moving and proximate force of injury to the Plaintiff by depriving him of his rights afforded to him under the first and fourteenth amendments to the Constitution of the United States.

89. As a direct and proximate result of the policies, practices and customs of the Defendant New York Police Department, the Plaintiff suffered damages as have been previously described herein.

**WHEREFORE,** Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

(A) full and fair compensatory damages in an amount to be determined by a jury;

(B) punitive damages in an amount to be determined by a jury;

(C) reasonable attorney's fees and the costs and disbursements of this action; and

(D) any such other relief as appears just and proper.

Dated: August 31, 2015

Respectfully Submitted,

By:    */S/ Solomon M. Radner*
       SOLOMON M. RADNER (P73653)
       Attorney for Plaintiff
       26700 Lahser Rd., Suite 400
       Southfield, MI 48033
       (248) 291-9719

## JURY DEMAND

Plaintiff requests a trial by jury on all matters before the Court to the extent allowed by law.

Respectfully Submitted,

By:    */S/ Solomon M. Radner*
       SOLOMON M. RADNER (P73653)
       Attorney for Plaintiff
       26700 Lahser Rd., Suite 400

Southfield, MI 48033
(248) 291-9719

Dated: August 31, 2015