## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHNNY TLAPANCO,

                 Plaintiff,

-vs-

JONATHAN ELGES, individually and in his
Official capacity as a detective of the Oakland
County Sheriff's Department; MICHAEL
McCABE, individually and in his official
capacity as the Undersheriff of the Oakland
County Sheriff's Department; OAKLAND
COUNTY a Political sub-unit of the State of
Michigan; GREGORY THORNTON,
individually and in his official capacity as a
detective of New York Police Department;
and the NEW YORK POLICE
DEPARTMENT, a municipal agency of the
City of New York;

                 Defendants.

Case No. 16-cv-13465-AJT

Hon. Arthur J. Tarnow

_____/

## PLAINTIFF'S FOURTH AMENDED COMPLAINT

      NOW COMES Plaintiff, JOHNNY TLAPANCO, by and through his attorneys

EXCOLO LAW, PLLC, and respectfully alleges as follows:

### PRELIMINARY STATEMENT

      1.      This is a civil rights action against two law enforcement officials of the

Oakland County Sheriff's Department of the State of Michigan, Jonathan Elges

(hereinafter "Elges"), and Michael McCabe (hereinafter "McCabe"), the County of

Oakland (hereinafter "Oakland County") (collectively, the "Oakland County

1

Defendants,) one law enforcement official of the New York Police Department, Gregory Thornton (hereinafter "Thornton"), and the New York Police Department (hereinafter the "NYPD" or collectively the "NYPD Defendants"), in which the Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983.

2.     Plaintiff seeks damages, both punitive and compensatory, an award of costs and attorney's fees, and any other relief this court deems just and proper.

## JURISDICTION AND VENUE

3.     This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, and Fourteenth Amendments to the United States Constitution.

4.     Jurisdiction is found upon 28 U.S.C. § 1331, and 1343.

5.     Venue is properly laid in the Eastern District of New York, the Southern District of New York, or the Eastern District of Michigan per 28 U.S.C. § 1391(b).

6.     Plaintiff's claims stem from his search, seizure, arrest, and detention without probable cause or privilege under the color of state law, first while in New York, and then again while in Michigan after being extradited to Michigan.

7.     Because of Plaintiff's arrest by the NYPD defendants working with the Oakland County Defendants, Plaintiff spent two weeks at Riker's Island jail before finally being extradited to Michigan, at which time he was incarcerated in the Oakland County jail until the criminal charges levied against him were dismissed.

## PARTIES

8.     Plaintiff JOHNNY TLAPANCO is a citizen of the United States, and at all relevant times was a resident of the City of Brooklyn, State of New York.

9.     Defendant JONATHAN ELGES is a detective for the sheriff's office for

2

the County of Oakland, State of Michigan, and is a duly sworn police officer of said department, acting under its supervision and according to his official duties.

10. Defendant MICHAEL McCABE is the second in command and the Undersheriff at the sheriff's office for the County of Oakland, State of Michigan, and is a duly sworn police officer of said department, acting under its supervision and according to his official duties. Defendant McCabe is a policy maker and decision maker for the sheriff's office of Oakland County and as such had the absolute power to give orders to subordinates which must be followed, including the order to copy of Plaintiff's electronic devices – an order which he knew none of his subordinates would question. McCabe gave this order after he knew the criminal case was dismissed and Tlapanco's property was ordered to be returned to him by the judge presiding over the criminal case, all of which is explained in greater detail herein.

11. At all pertinent times, Defendants Elges and McCabe, were personally acting under the color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the County of Oakland. Each and all of the acts of the Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by the Oakland County Sheriff's Department.

12. Defendant OAKLAND COUNTY is a political sub-unit of the State of Michigan.

13. Defendant GREGORY THORNTON, is a detective for the New York Police Department, City of New York, and State of New York, and is a duly sworn police officer of said department, acting under the supervision of said department and

according to his official duties.

14.    That at all times relevant hereinafter mentioned, Defendant Thornton was personally acting under the color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of New York. Each and all of the acts of Defendant Thornton alleged herein was committed while acting within the scope of Thornton's employment by the New York Police Department.

15.    Defendant NEW YORK POLICE DEPARTMENT is a municipal agency of the City of New York and was charged with the responsibility of enhancing the quality of life in New York City by working in accordance with constitutional rights to enforce the law.

16.    Defendants Elges, McCabe, and Thornton are being sued in their individual capacities.

17.    All herein complained of actions of all the defendants were done wantonly, intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently, and without any lawful basis and in bad faith.

## FACTS

18.    On or about March 6, 2014, a fourteen-year-old female student (hereinafter "the student") of Oxford High School located in Rochester, Michigan, made a complaint to her high school security officer that she was being blackmailed by a stranger via an online instant messenger known as "KIK."

19.    In her statement, the student said that beginning on the morning of March 4, 2014, the stranger messaging her under the display name "anonymous"

4

stated that he had already hacked into her cell phone and now possessed several nude pictures of her, which she had previously taken of herself and stored on her phone. He further demanded that she send him additional nude photos of herself, in specific outfits and/or positions, and that if she refused, he would send the pictures he already obtained of her, to all of her friends and family.

20.    The blackmail continued, even after the student complied with some of the requests she received from the stranger, and she told the school security officer after the stranger told her that he would be contacting her regularly asking for more pictures until she reached the age of twenty-one.

21.    On March 6, 2014, the high school security officer contacted the Oakland County Sheriff's Department to inform them of the student's complaint. The case was then assigned to Defendant Elges for investigation.

22.    During an interview between Defendant Elges and the student, Elges questioned her as to whether anyone else had possessed her phone recently, who could have had acquired her personal photos. The student informed Elges that yes, a male friend of hers had taken her phone on or about February 27, 2014, and had kept the phone overnight. She further stated that she had sent nude photos of herself to this friend of hers in the past.

23.    After interviewing both the student and her friend, both of them signed consent forms and turned over their cell phones to Defendant Elges for inspection, along with an iPod that belonged to the student.

24.    Upon inspection, there was no question that someone was in fact blackmailing the student for nude photos; it was now up to Defendant Elges to

determine who this individual was.

25.    In Defendant Elges' own investigative report he acknowledges on both March 11, 2014 and March 14, 2014, that through the phone records of the friend's cell phone carrier, a large amount of data was sent from the student's phone to the friend's phone, on February 25, 2014 and February 26, 2014. This was never investigated further, although it is fairly obvious that the first person of interest should have been this friend.

26.    Instead, on or about March 6, 2014, without performing any due diligence whatsoever, specifically but not limited to, researching or identifying the difference between an individual's KIK account username versus their display name, Defendant Elges sent a written request to KIK for the e-mail address and recent IP addresses belonging to username "anonymous" instead of for the information pertaining to username "anonymousfl" which was the username of the culprit.

27.    The culprit was using the display name "anonymous" but had the unique username of "anonymousfl" – the difference is simply that display names are not unique and usernames are. Any number of people could be using the same display name at any given time on KIK, but each KIK account only has one username.

28.    Defendant Elges knew or should have known the difference between a KIK username and a KIK display name, or alternatively he should never have been permitted by the Defendant County to engage in such investigations, or alternatively the County should have required Elges to investigate the matter before taking any action. The County by allowing untrained and unsupervised law enforcement officials to investigate such crimes without such basic knowledge, demonstrated deliberate

indifference to the rights of Plaintiff, which directly caused Plaintiff to suffer the herein complained of civil rights violations.

29.     Sometime thereafter, Defendant Elges was provided the information he requested, including Plaintiff's personal G-Mail e-mail address, and two IP addresses.

30.     On or about March 18, 2014, Defendant Elges served a search warrant on Google to provide the identity of the person who opened the e-mail account, and the next day, Google responded providing Plaintiff's full name, among other information relating to his account.

31.     Around that same date, Defendant Elges executed a search warrant for the two IP addresses and learned the locations of the college Plaintiff attended, and his residence.

32.     Defendant Elges also executed a warrant to the college Plaintiff attends, for the data indicating whether Plaintiff logged into KIK from any of the college's computers on the specific dates the student was contacted by "anonymous", March 4, 2014 and March 6, 2014. This data, according to Elges, indicated that Plaintiff did log into KIK on those days, but did not indicate if any messages were exchanged. This data was, according to Elges, converted into a chart that was easier to understand, and saved by Defendant Elges, but never provided to Plaintiff's defense counsel while a criminal case was pending against Tlapanco.

33.     On or about April 18, 2014, detective Carol Liposky performed a forensic examination on the student and friend's cell phones, as well as the student's iPod.

34.     On or about April 23, 2014, Defendant Elges received and reviewed the

forensic investigation results, and made note in his investigative report of some of the messages that were sent from "anonymous" to the student.

35.    On or about May 1, 2014, Defendant Elges received results from yet another warrant for Plaintiff's personal information, this one sent to Facebook, and learned Plaintiff's cell phone number. Elges proceeded to execute a search warrant on Plaintiff's cell phone carrier for phone records.

36.    Shortly thereafter, Defendant Elges contacted Defendant Thornton of the NYPD, to execute the premises search warrant of 3154 Coney Island Ave Brooklyn NY 11235 and sent an affidavit sworn in front of Magistrate Soma.

37.    Shortly thereafter, Defendant Thornton contacted Elges and informed him that he swore and served the warrant requesting connection data for Kingsborough Community College and retrieved the requested data.

38.    Thornton did not verify any information and in fact violated and disregarded legal safeguards that are in place to stop such abuses. Alternatively, NYPD demonstrated deliberate indifference by not supervising and/or training Thornton to verify such information, which directly caused Plaintiff to suffer the herein complained of civil rights violations.

39.    On May 21, 2014, Defendants executed a search warrant on Plaintiff's home and seized multiple electronics belonging to Plaintiff and his family members, including two desktop computers, a laptop, a cell phone, three iPods and four jump drive storage devices.

40.    After securing the electronics, Defendants then asked Plaintiff if he would speak with them regarding their investigation, and Plaintiff willingly

cooperated.

41.    Plaintiff was questioned about the underage student from Oakland County, Michigan, and Plaintiff truthfully told the officers he doesn't believe he's ever spoken with this girl, but that as a twenty-year-old young man, he does frequently speak with women online. Plaintiff further stated in his statement that he has **never** requested or received nude photos from anyone underage.

42.    Plaintiff was questioned about his username "anonymous" which he truthfully acknowledged did belong to him. Plaintiff was then shown some of the messages sent to the student by "anonymous" and he truthfully informed the Defendants that he did not send any of them. The defendants refused to even consider Tlapanco's denials or seek an explanation from him. Tlapanco would have, had he been given the opportunity. However, the defendants only wanted a confession.

43.    On or about June 20, 2014, Defendant Elges reviewed the analysis of Plaintiff's belongings, and indicated in his own investigative report that there were no images of the student, and no KIK messages sent to anyone until March 17, 2014.

44.    At this point, the obvious and fool-proof solution to determine whether Plaintiff was in fact the perverted individual who was blackmailing the student, Defendant Elges could have and should have simply sent a reply message from the student's device to "anonymous" and see if the reply appears on Plaintiff's device; if it does, case solved, and if it does not, Elges should have considered the fact that he has been pursuing the wrong person. Further, the subject blackmail messages began on March 4, 2014 – well before March 17, 2014, which immediately proved that Tlapanco was innocent, but the defendants did not dismiss the case, free Tlapanco, or

return his property to him.

45.     On July 9, 2014, Plaintiff was arrested by Defendant NYPD's officers, who were again acting on the false information provided by the other Defendants, on eight felony charges, most of which carry maximum sentences of twenty years to life in prison, and are listed as follows:

     a.     Three counts of child sexually abusive activity;

     b.     Four counts of using a computer to commit a crime; and

     c.     One count of accosting a child for immoral purposes.

46.     After being booked, Plaintiff spent two weeks at Riker's Island jail, from July 9, 2014 through July 22, 2014, until Defendants extradited Plaintiff to Michigan; a place Plaintiff had never visited before.

47.     Once extradited to Michigan, Plaintiff was arraigned by video from the Oakland County Jail on July 23, 2014 and pleaded not guilty to all charges.

48.     One day prior, July 22, 2014, Plaintiff's family retained a Michigan defense attorney, who is undersigned's co-counsel in this action, Solomon Radner of 1-800-LAW-FIRM, PLLC, to represent Plaintiff.

49.     After receiving and reviewing the discovery materials, Radner met with Defendant Elges on August 11, 2014 and, after reviewing the evidence together with Defendant Elges, informed Defendant Elges that the evidence clearly proved that Elges has been pursuing the wrong man. Radner explained that while Plaintiff did in fact possess a KIK account with a username "anonymous", the individual blackmailing the student was using a display name "anonymous", and anybody can make their display name whatever they choose, as it is not permanent, unlike the

username. Moreover, there could be hundreds of people using the display name "anonymous" at any given time.

50.     Further, the evidence clearly showed that the perverted messages were being sent by username "anonymousfl" and not by username "anonymous" and there was evidence, and to this day there is still no evidence, that the username "anonymousfl" had any relation to Plaintiff.

51.     On August 12, 2014 at the preliminary examination hearing in the District Court for the City of Oxford, Michigan, after conversation took place between Defendant Elges and the Oakland County Prosecutor's Office, the prosecutor informed the Court that he sought to drop all charges against Mr. Tlapanco, and the case was dismissed. The Judge also ordered on the record for Mr. Tlapanco's mugshot and fingerprints to be destroyed and his property to be returned to him.

52.     Tlapanco, though counsel, specifically requested the return of Plaintiff's property on the record because Defendant Elges' advised him the previous day that he planned to keep Plaintiff's electronics to conduct an analysis of them. There being no lawful basis for the county to conduct such analysis, Plaintiff's counsel sought an order from the court to immediately have Plaintiff's property returned to him.

53.     Despite the order from the Judge to return Plaintiff's property to him immediately, Defendant McCabe, a supervisory official, ordered Carol Liposky, a subordinate, through the chain of command, to make copies of all of Plaintiffs electronics. McCabe knew Liposky would not question his order and would do as ordered, which is exactly what she did.

54.     Defendant McCabe unlawfully ordered Plaintiffs personal property to be

copied and retained by Defendant County despite his actual knowledge the criminal charges against Plaintiff had been dismissed and that the Judge had ordered his personal information destroyed and that same property be immediately returned. Liposky then obeyed McCabe's order and copied Plaintiff's electronic devices despite the judge's order to immediately return Tlapanco's property to him; these copies of Plaintiff's electronic devices are still unlawfully in the possession of Defendant County.

55.     Plaintiff was then released from custody, and was able to return home to New York after spending a total of five weeks of being unlawfully arrested, charged, and imprisoned for heinous crimes he did not commit.

56.     Not a single one of the defendants ever apologized to Mr. Tlapanco.

57.     As a result of the foregoing, Plaintiff was forced to drop out of college for the semester, and has since severely suffered emotional distress, embarrassment, humiliation, depression, anxiety and deprivation of his constitutional rights.

### Count I - Unlawful Search and Seizure Under 42 U.S.C. § 1983

58.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained herein with the same force and effect as if fully set forth herein.

59.     All of the acts of Defendants, including the search, seizure, arrest, prosecution, and detention of Plaintiff were without sufficient probable cause or lawful basis, and were carried out under the color of state law.

60.     All of the aforementioned acts of Defendants, deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of

America, and in violation of 42 U.S.C. § 1983.

61.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as law enforcement officers, and/or pursuant to the customs, usages, practices, procedures, and the rules of the County of Oakland, Michigan, and the Oakland County Sheriff's Department, all under the supervision of ranking officers of said department.

62.    Defendants collectively and individually, while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden under the Constitution of the United States.

63.    Defendant Gregory Thornton of the NYPD, while arresting Plaintiff for the purpose of extradition to Michigan, failed to mandate a sufficient factual demonstration to satisfy the statutory requirements designed to protect a New York resident though Plaintiff was not physically present in Michigan at the time of the alleged crime.

64.    Defendant Thornton of the NYPD failed to comply with the requirements of interstate extradition as laid out by N.Y. Crim. Proc. Law § 570.16, and the NYPD lacked sufficient oversight, training, and/or supervision to ensure such compliance by Thornton, thereby demonstrating deliberate indifference to the rights of Plaintiff.

65.    Any of the Defendants in this case, acting in supervisory roles, at least implicitly authorized approved or knowingly acquiesced in the unconstitutional behavior of the offending subordinates.

66.    The defendants intentionally, knowingly, maliciously, recklessly,

unreasonably, and/or gross negligently, and without any lawful basis searched Plaintiff's home in New York, detained him, and seized his electronic devices, all in violation of 42 USC 1983 and the Fourth and Fourteenth Amendment.

67. Plaintiff suffered harm as a result.

### Count II - False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983

68. Plaintiff repeats, reiterates and re-alleges each and every allegation contained herein with the same force and effect as if fully set forth herein.

69. Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently, and without any lawful basis, arrested Plaintiff, imprisoned him in New York, extradited him to Michigan, and incarcerated him in Michigan, all without a lawful basis and without probable cause that Plaintiff committed a crime.

70. Plaintiff was arrested, extradited, and imprisoned for five weeks while charges were pending against him, despite the fact that no probable cause existed that Plaintiff committed a crime.

71. Plaintiff suffered harm as a result.

### Count III - The August 12-13, 2014 Unlawful Search and Seizure under 42 U.S.C. § 1983

72. Plaintiff repeats, reiterates and re-alleges each and every allegation contained herein with the same force and effect as if fully set forth herein.

73. On August 12, 2014 and August 13, 2014, *__after__*, the criminal court had dismissed the criminal case against Plaintiff and/or *__after__* the judge ordered the immediate return of Plaintiff's property, and/or after the defendants knew that they

had subpoenaed the wrong email address thereby knowing that they had seized the wrong person's electronic devices, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently, and without any lawful basis copied Plaintiff's electronic devices and retained copies of them, and conducted unlawful searches of these copied devices.

74.    Plaintiff suffered harm as a result.

## Count IV - Malicious Prosecution under 42 U.S.C. § 1983

75.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained herein with the same force and effect as if fully set forth herein.

76.    Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently, and without any lawful basis initiated a criminal prosecution against Tlapanco, despite there being no probable cause that Plaintiff committed any crime, thereby causing Plaintiff to suffer a search and seizure of his property, an arrest, an extradition, and five weeks of incarceration, and the prosecution was terminated in his favor by way of dismissal.

77.    Plaintiff suffered harm as a result.

## *Monell* Liability under 42 U.S.C. § 1983

78.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained herein with the same force and effect as if fully set forth herein.

79.    At all times relevant herein, Defendant Oakland County, acting through its policymaker(s), by its own customs, policies or practices, and failed to establish, maintain or enforce proper police procedures, hiring standards and practices, training practices, as well as disciplinary procedures, necessary to prevent the unconstitutional

15

conduct herein described directly, and therefore constitutes the moving and proximate force of injury to the Plaintiff by depriving him of his rights afforded to him under the first and fourteenth amendments to the Constitution of the United States.

80.    Defendant Undersheriff McCabe, the second in command at the Oakland County Sheriff's office, in his capacity as a policy and/or decision maker, ordered a subordinate, through the chain of command, to make copies of all of Plaintiff's electronic devices despite having direct knowledge that all criminal charges against Plaintiff had been dropped and his property ordered to be returned. The subordinate, obeyed McCabe's order, as McCabe knew she would.

81.    As a direct and proximate result of the policies, practices and customs of the Defendant Oakland County, the Plaintiff suffered there herein described harm.

82.    At all times relevant herein, Defendant New York Police Department, acting through its policymaker(s), by its own customs, policies or practices, failed to establish, maintain or enforce proper police procedures, hiring standards and practices, training practices, as well as disciplinary procedures, necessary to prevent the unconstitutional conduct herein described directly, and therefore constitutes the moving and proximate force of injury to the Plaintiff by depriving him of his rights afforded to him under the first and fourteenth amendments to the Constitution of the United States.

83.    As a direct and proximate result of the policies, practices and customs of the Defendant New York Police Department, the Plaintiff suffered damages as have been previously described herein.

84.    Oakland County and the NYPD thereby demonstrated deliberate

indifference to the civil rights of Plaintiff and Plaintiff suffered the herein described civil rights violations as a direct and foreseeable result.

**WHEREFORE,** Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

(A)    full and fair compensatory damages in an amount to be determined by a jury; and

(B)    punitive damages in an amount to be determined by a jury; and

(C)    reasonable attorney's fees and costs; and

(D)    any such other relief as appears just and proper.

## <u>JURY DEMAND</u>

Plaintiff respectfully demands a trial by jury of all issues in this matter, pursuant to Fed. R. Civ. P. 38 (b).

Respectfully Submitted,

EXCOLO LAW, PLLC

By:    */S/ Solomon M. Radner*
SOLOMON M. RADNER (P73653)
Attorney for Plaintiff
26700 Lahser Rd., Suite 400
Southfield, MI 48033
(248) 291-9712

Dated: September 17, 2018

## CERTIFICATE OF SERVICE

Undersigned hereby states that on **September 17, 2018**, he caused the foregoing document to be filed electronically with the United States District Court and that a copy of document was served on all counsel of record through the Court's CM/ECF system.

*/s/ Solomon M. Radner*
Solomon M. Radner (P73653)